NATHAN SHUMAN *vs.* MUTUAL OF OMAHA INSURANCE COMPANY.

Suffolk. January 5, 1966. — February 9, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Insurance,* Agent. *Contract,* Between insurance company and agent.

In the circumstances, under a contract between an insurance company and its agent providing, among other things, for the payment of renewal commissions to the agent "only during the time this contract remain[ed] in full force and effect and while" the agent continued to produce a stated minimum amount of new business, the "production requirement" being waived when the agent became sixty-five years of age, that either party might cancel the contract on notice to the other, and that the agent should write insurance exclusively for the company and the contract should "become null and void and all rights provided for" therein should "cease" if he should "write or attempt to write" insurance for any other insurer, the agent's right to renewal commissions terminated when, after he had become sixty-five years old, the company notified him that the contract was cancelled and thereupon he obtained licenses to write insurance for other insurers, irrespective of the effect of a check sent to him by the company at the time of the cancellation and indorsed and cashed by him, reciting that it was "payment in full for services rendered and/or any indebtedness to payee by payor."

BILL IN EQUITY filed in the Superior Court on June 20, 1963.

The plaintiff appealed from a final decree entered after hearing on a master's report by *DeSaulnier, J.*

*Warren H. Pyle* for the plaintiff.

*Philip Markell* (*Herman Snyder* with him) for the defendant.

WHITTEMORE, J. The plaintiff's bill of complaint seeks an accounting for renewal commissions alleged to be due under an agent's contract for the sale of health and accident insurance for the defendant (Mutual). A confirmed master's report stated the account in the amount of $4,476.73 and found facts in respect of liability on which the judge entered a final decree dismissing the bill. The contract,

dated January 2, 1952, is on Mutual's printed form.   It provided that a "five per cent (5%) renewal collection fee for servicing policies" written by Shuman, the plaintiff, should be paid by Mutual "only during the time this contract remains in full force and effect and while . . . [Shuman] continues as an active producing agent . . . and while . . . [Shuman] is writing at least Ten (10) new health and accident applications . . . amounting to at least . . . $390.00 per month . . . .   This production requirement is waived when the agent attains the age of sixty-five (65) years."

The contract also provided that if Shuman became permanently and totally disabled after meeting the production requirements for at least a year Mutual would pay the five per cent renewal collection fee until Shuman's death "as a gratuity" provided Shuman did not engage in the business of insurance for any other company during the period of disability.   Additionally, after Shuman's death, "provided the contract is still in full force and effect, and provided further he has qualified under the production requirement," Mutual would pay "as a gratuity" the five per cent renewal collection fee for the lifetime of a designated beneficiary.

Elsewhere in the contract was this provision: "Each party shall have the right at any time to cancel this contract by written notice to the other party."   The contract further provided that Shuman should "write accident and health insurance exclusively for . . . Mutual . . . and, if and when the said agent shall write or attempt to write insurance for any other company . . . this contract shall become null and void and all rights provided for in this contract shall cease, unless permission to so write said insurance shall have been granted in writing . . .."   The master's report states, "I heard no evidence that such written permission was given . . . to the plaintiff."

Shuman reached the age of sixty-five years on December 25, 1954, and continued to write insurance for Mutual up to December, 1958.   On December 9, 1958, Mutual sent Shuman a notice that "said contract is cancelled as of De-

cember 9, 1958 . . . [and] we are terminating your license . . . to sell insurance for Mutual . . . ." On December 10, 1958, the Division of Insurance of the Department of Banking and Insurance of the Commonwealth sent Shuman a notice that "your authority as agent of . . . Mutual . . . has been cancelled . . . and the cancellation made a matter of record . . . ." Shuman received from Mutual and cashed a check dated December 10, 1958, and, by indorsement under seal, he acknowledged the assertion printed on the check that it was "payment in full for services rendered and/or any indebtedness to payee by payor."

After December 10, 1958, Shuman received licenses from the proper Massachusetts authorities to write insurance for other companies, effective as follows: Continental Casualty Company from January 15, 1959, to June 30, 1960; Craftsman Insurance Company from April 21, 1959, to June 30, 1961. "[S]ince 1961, Shuman has sold no insurance of any kind for any company." He received no renewal commissions from Mutual on premiums collected by it since December 10, 1958.

On April 1, 1959, Shuman, without counsel, brought an action under small claims procedure against Mutual for "$75.00 for work performed." That action, according to the master's report, has not been disposed of.

Shuman contends that the "production requirement" that was "waived when the agent attains the age of sixty-five (65) years" was all the requirement previously specified in the paragraph providing for the payment of the renewal collection fees, that is, the requirement that such fees should "be payable only during the time this contract remains in full force and effect and while . . . [Shuman] continues as an active producing agent . . . ." He suggests that it is an unreasonable construction that would permit Mutual, after Shuman's sixty-fifth birthday, to have what would be in effect an option to cancel its renewal premium obligations, both as to Shuman and his widow, for no other reason than to escape such obligations. Shuman contends that, whether terminated or in force the con-

tract left him free of any specified task after he became sixty-five. In this connection we note that although the contract states that the "renewal collection fee" is payable "for servicing policies" no "servicing" duties are specified to be performed as a condition for receipt of the renewals. Shuman relies on the principle that termination of a contract cannot cut off an accrued right that is not dependent upon any continuing performance. See *Globe Paper Co. Inc.* v. *Russell Box Co.* 291 Mass. 1.

We do not pause to determine whether the contract language is ambiguous so that construction is required. The difficulty with the plaintiff's contention is that, along with every other obligation of Mutual under the contract, the obligation to pay renewals was to end "if and when the said agent shall write or attempt to write insurance for any other company." As noted, the express provision is that in that event "all rights provided for in this contract shall cease." Shuman does not contend that the licenses to write insurance for two other companies in 1959, 1960 and 1961 did not show an "attempt to write insurance" for those companies. At best for Shuman as we view it, the construction for which he contends would have left him a retired agent with no power to write new insurance for Mutual, and with a right to the renewals, but subject to an obligation not to write insurance for others.

We disagree with Shuman's contention that a breach by Mutual on December 9, 1958, had left him free of all contract obligations but had left Mutual subject to an obligation to pay renewals. Mutual had an express right to terminate the agency contract, and the power to sell insurance under it. Shuman recognizes this. The letter of December 9, 1958, exercised that right. It did not in terms assert that no renewals would thereafter be paid. The tender of the check "in full for services rendered and/or any indebtedness" was construable as such an assertion. Shuman contends, however, and rightly we think, that the statement was not a sufficiently direct assertion that Mutual would not thereafter become indebted on account of pre-

miums subsequently paid to bind Shuman to that position merely by his acceptance of the check. Thus, after December 9, 1958, on Shuman's construction of the contract and of what had happened, he had a right to the renewals, so long as he conformed to the contract and Mutual had not repudiated that right. Pending such repudiation, Shuman if he wished to preserve that right under the contract was obliged to conform thereto. Rather than so acting, or giving any notice to Mutual raising the issue, he chose, on or before January 15, 1959, to go to work for another insurance company, thus causing all his "rights . . . in this contract . . . [to] cease."

In the circumstances we think that Shuman's unequivocal action on or before January 15, 1959, may be taken as evidence of acquiescence in Mutual's letter and tender as cutting off all rights and that it is unnecessary to ascertain whether some renewals had accrued in the interval.[1]

The final decree is affirmed.

*So ordered.*

---

[1] The master's report shows no renewals for December, 1958, and, for the year 1959, renewals in the amount of $18,795.17. Five per cent of this, as shown, is $939.76. A small portion of this may have been due for the period ending January 15, 1959.